Dionisios **HATZOGLOU**, Libelant,

v.

**ASTURIAS SHIPPING COMPANY, S.A.** and **THE S.S. ANDALUSIA,** her engines, tackle, boilers and appurtenances, etc., Respondents.

United States District Court
S. D. New York.
April 6, 1961.

Lebovici & Safir, New York City, for libelant; Herbert Lebovici, New York City, of counsel.

Kirlin, Campbell & Keating, New York City, for claimant-respondent; John A. Dowd, William D. Powers, New York City, of counsel.

FREDERICK van PELT BRYAN, District Judge.

This is a suit in admiralty by a Greek national and resident against a Panamanian corporation and the Liberian vessel which it owns.

The libel states four claims: (1) for overtime wages aboard the vessel on the high seas allegedly due under the laws of the Republic of Liberia; (2) for wages allegedly withheld and penalties, pursuant to 46 U.S.C.A. §§ 596 and 597; (3) for injuries sustained aboard the vessel on December 7, 1959 on the high seas between Curacao and Antwerp and allegedly caused by negligence and unseaworthiness; and (4) for damages for failure properly to treat these injuries from the time of the accident until the ship docked at San Pedro, California, on January 11, 1960.

Libelant received some medical treatment at San Pedro and in New York but it is not claimed that there was anything wrong about his treatment in this country. Thus, the fourth claim, like the third, is based on events occurring entirely outside of the United States.

Respondent Asturias moves that this court, in the exercise of its discretion, decline jurisdiction over the third and fourth claims in the libel on the ground of forum non conveniens. It concedes that this court must retain jurisdiction over the first and second claims. This court has the power, and, in proper cases, the duty to decline jurisdiction over some claims in a libel in admiralty while retaining jurisdiction over others. See Conte v. Flota Mercanta del Estado, 2 Cir., 277 F.2d 664.

Basically, the question presented by respondent's motion is whether under all the circumstances this court is an inappropriate forum for the trial of libelant's third and fourth claims for personal injuries and failure to treat them.

The facts on which libelant's third and fourth claims are based have no connection with this district, or, indeed, with this country. Libelant Hatzoglou is a Greek national presently living in Greece, who signed articles to serve aboard respondent vessel S. S. Andalusia as chief officer on November 11, 1959 at Piraeus, Greece. A few days later he joined the vessel at Zebrugge, Belgium.

The Andalusia was a Liberian flag vessel owned by a Panamanian corporation, whose principal stockholders were Greek. Most, if not all, of the officers and crew were also Greek nationals.

The agreement which Hatzoglou signed was written in Greek, and contained the following paragraphs, here given in translation:

"6. In cases of illness or incapacity through accident on board, the Greek laws and the scale of wages for sickmen as indicated in the Greek Collective Agreement will apply, as shall be in force at the time; in the case of British subjects, the English law will apply."

"9. Both contracting parties agree not to have recourse to American or other Foreign Courts of Law and that only the Greek law will apply in cases where no explicit agreement shall have been reached except as regards the foregoing matters agreed upon, irrespective of the place where this agreement is signed, or the place where such disputes may occur."

It is alleged that while Hatzoglou was serving as chief officer, pursuant to the agreement, aboard the S.S. Andalusia, he fractured his right wrist. The accident occurred on the high seas between the Ports of Antwerp and Curacao. Libelant was subsequently discharged in California where he received medical treatment. He then travelled on his own to New York where he paid one visit to respondent's doctor. He was then repatriated to Greece by respondent, where he now lives.

Neither the accident nor the alleged failure to treat properly, occurred in the United States or on American waters, or between American ports, or on an American vessel, or on a vessel with which Americans had any connection whatsoever. All of the witnesses who could testify to the facts concerning the accident or the alleged failure to treat aboard the vessel are Greek nationals. None of them appear to reside here. From all that appears, their testimony would have to be given in the Greek language and would have to be translated. It is true that the testimony as to treatment in California and the visit to the doctor in New York would be relevant. But in all probability such testimony would be based almost entirely on medical records which could readily be made available in another forum and such oral testimony as might be required could be readily taken by deposition. Testimony as to libelant's condition at the time of the trial could easily be obtained in Greece where plaintiff resides.

The observation of the Court of Appeals of this circuit in a similar situation in Conte v. Flota Mercante del Estado, supra, 277 F.2d at page 667, is pertinent here:

"It is *prima facie* undesirable that an overburdened District Court should conduct a trial in a personal injury action between foreigners,

with all the evidence on the issue of liability and much of the evidence on damages given in a foreign tongue by witnesses equally or more available in the foreign forum, and with reliance having to be placed on expert testimony as to the governing law, when, as here, an adequate remedy is available in the country where both parties reside and to which the plaintiff will return."

■ Hatzoglou attempts to distinguish the Conte case by arguing that American law would govern his rights despite the articles which he signed providing for the application of Greek law, and despite the extremely tenuous contacts which his case has with the United States. He points out that the ship was a Liberian flag vessel and that Section 30 of the Liberian Maritime Law provides:

"Insofar as it does not conflict with any other provision of this Title, the non-statutory Maritime Law of the United States of America is hereby adopted as the General Maritime Law of the Republic of Liberia."

From this he argues that under American law the agreement which he signed in Greece to apply Greek law is invalid and that therefore under the Liberian law American non-statutory maritime law must be applied. I cannot agree. Such cases as The San Marcos, D.C.S.D. N.Y., 27 F. 567; Brown v. Lull, C.C.D. Mass., Fed.Cas.No.2,018; Harden v. Gordon, C.C.D.Me., 11 Fed.Cas. pages 480, 485, No. 6,047; The Rajah, D.C.D.Mass., Fed.Cas.No.11,538; The Betsy and Rhoda, D.C.D.Me., Fed.Cas.No.1,366, and The Sarah Jane, D.C.S.D.N.Y., Fed.Cas. No. 12,348, on which libelant relies, hold only that American seamen on American ships, signing American articles in America may not contract away their rights under American law. An agreement by a Greek chief officer, signed in Greece, written in Greek, to apply Greek law is fully valid. See Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254, upholding a similar agreement where the American contacts were far more numerous than in the case at bar. Such cases as Kontos v. The S.S. Sophie C., D.C.E.D.Pa., 184 F.Supp. 835, and Retzekas v. Vygla Steamship Co., S.A., D.C.D.R.I., 193 F.Supp. 259, where there was no proof of signing of such an agreement, are not in point here.

■ Thus, here we have events on which the third and fourth claims are based occurring on the high seas on a foreign vessel owned by a foreign corporation with no connection whatsoever with the United States. The libelant is a Greek national, the witnesses are Greeks, the stockholders of the corporation owning the vessel are Greeks, and Greek law is applicable under articles which libelant, not an ignorant seaman but the vessel's chief officer, signed in Greece.

There is no reason for this court to retain jurisdiction over claims of this character. It should decline jurisdiction on the grounds that this district is not the proper forum and Greece is. There will be no difficulty in retaining and disposing of the first and second claims for wages since proof of these is relatively simple.

Respondent has agreed to submit itself to jurisdiction in Greece and this will be a condition of the dismissal of the third and fourth claims in the libel. Since respondent has posted security here in the sum of $40,000 a further condition of dismissal will be the posting of security of the same amount in Greece.

The order to be settled dismissing the third and fourth claims in the libel will make appropriate provision for carrying out these two conditions.

Settle order on notice.